MANILDRA MILLING CORPORATION,
Plaintiff and Counterclaim
Defendant,

v.

OGILVIE MILLS, INC., Defendant
and Counterclaimant,

v.

HENKEL CORPORATION and Henkel
of America, Inc., Third–Party
Defendants,

and

John Thomas Honan, Counterclaim
Defendant.

Civ. A. No. 86–2457–DES.

United States District Court,
D. Kansas.

Feb. 14, 1995.

Edward L. Bailey, Carol B. Bonebrake, Charles T. Engel, Cosgrove, Webb & Oman, Topeka, KS, Charles D. Horner, Blackwell, Sanders, Matheny, Weary & Lombardi, Tim S. Haverty, Dennis L. Davis, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, W. Stanley Walch, Mark Sableman, Thompson & Mitchell, St. Louis, MO, William K. West, Wayne Jones, Cushman, Darby & Cushman, Murray J. Belman, Thompson & Mitchell, Washington, DC, for Manildra Milling Corp.

Patrick D. McAnany, McAnany, Van Cleave & Phillips, P.A., Lenexa, KS, Robert D. Benham, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Bruce H. Weitzman, Byron L. Gregory, McDermott, Will & Emery, Chicago, IL, Eugene Sabol, Paul Grandinetti, Fisher, Christen & Sabol, and Mark Lee Hogge, Morgan & Finnegan, Washington, DC, for Ogilvie Mills, Inc.

W. Stanley Walch, Dennis L. Davis, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, and Murray J. Belman, Thompson & Mitchell, Washington, DC, for John Thomas Honan.

R. Pete Smith, McDowell, Rice & Smith, P.C., Kansas City, MO, John D. Gould, Daniel W. McDonald, Alan G. Carlson, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN, Robert L. Baechtold, David F. Ryan, Fitzpatrick, Cella, Harper & Scinto, New York City, and Michelle M. Suter, Kurlbaum, Stoll, Seaman, Reefer Suter & Mustoe, P.C., Kansas City, MO, for Henkel Corp. and Henkel of America, Inc.

## *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

## I. *INTRODUCTION*

This matter is before the court on remand from the Federal Circuit and on Ogilvie Mills, Inc.'s ("Ogilvie") motions to deny or retax costs (Doc. 1354), to file reply briefs (Docs. 1367, 1368 and 1371), and for final judgment (Doc. 1377). The court has examined the Federal Circuit's instructions on remand, as well as the parties' motions and memoranda, and is ready to rule.

## II. *PROCEDURAL BACKGROUND*

Manildra Milling Corporation ("Manildra") commenced this action for declaratory relief and damages alleging the following: (1) U.S. Patents 3,901,725 and 4,280,718 were invalid and Manildra did not infringe them; (2) Ogilvie violated federal antitrust laws; (3) Ogilvie violated the Lanham Act, 15 U.S.C. § 1125; and (4) Ogilvie violated the Kansas common law of unfair competition—that is, Ogilvie committed the torts of intentional interference with prospective business advantage and injurious falsehood. Ogilvie counterclaimed patent infringement.

Jury trial commenced August 26, 1991. On January 16, 1992, the case was submitted to the jury. After deliberating for six weeks, the jury found that Ogilvie's patents were invalid and not infringed by Manildra and that Ogilvie violated the Lanham Act and Kansas common law. The jury awarded Manildra $2,250,000.00 in compensatory and $2,500,000.00 in punitive damages.

The court entered judgment February 27, 1992. Thereafter, Ogilvie moved for judgment as a matter of law, new trial, and remittitur and Manildra moved to amend the judgment, award attorneys' fees pursuant to 15 U.S.C. § 1117(a), 35 U.S.C. § 285, and 28 U.S.C. § 1927, and for partial new trial. On June 15, 1992, the court entered amended judgment after granting Manildra's motion for attorneys' fees; denying Manildra's motions for enhanced damages and partial new trial; denying-in-part Ogilvie's renewed request for a ruling on its motion to correct inventorship under 35 U.S.C. § 256; and denying Ogilvie's motions for judgment as a matter of law, new trial, and remittitur.

Ogilvie appealed from the denial of its post-trial motions and Manildra cross-appealed from the denial of its motion for partial new trial ("Manildra I"). Ogilvie posted a $5,937,500.00 supersedeas bond ("Supersedeas Bond I") to secure the judgment pending resolution of Manildra I. On June 22, 1993, the Federal Circuit issued a decision on Manildra I in which it concluded that the court erred in failing to grant Ogilvie's motion for judgment as a matter of law on the Lanham Act and Kansas unfair competition claims,

but refused to disturb the court's judgment as to invalidity and noninfringement. Additionally, the Federal Circuit vacated the attorneys' fees award to the extent it was based on the Lanham Act and Kansas unfair competition claims and remanded for consideration of whether other grounds for the award remained. Mandate on Manildra I issued October 12, 1993. The United States Supreme Court denied Manildra's petition for *certiorari* February 28, 1994.

On June 18, 1993, four days before the Federal Circuit's decision on Manildra I, the court fixed the amount of Manildra's attorneys' fees. Ogilvie appealed ("Manildra II") and posted a $3,977,902.00 supersedeas bond ("Supersedeas Bond II") as security. On December 14, 1993, the court reconsidered its June 18, 1993, Memorandum and Order in light of the Federal Circuit's resolution of Manildra I. Given the scope of Manildra I, the court denied Manildra's motion for attorneys' fees. The court also denied Ogilvie's motion to reconsider its request for mistrial-related attorneys' fees. Subsequently, Manildra immediately moved to reconsider the denial of fees and Ogilvie appealed the denial of its renewed request for mistrial-related fees ("Manildra III").

On March 21, 1994, the Federal Circuit issued two orders. The first order denied Ogilvie's motion to cancel Supersedeas Bond I. Although denying the motion, the Federal Circuit noted that it could find no basis in the record to maintain the bond and authorized Ogilvie to raise the issue again on remand. The second order addressed the effect of the court's December 14, 1993, decision. The Federal Circuit held that because Manildra II was pending, the court lacked jurisdiction to issue the December 14, 1993, Memorandum and Order vacating the June 18, 1993, decision. Thus, to the extent the December 14, 1993, Memorandum and Order purported to vacate the June 18, 1993, decision, the Federal Circuit found it to be a nullity. However, the Federal Circuit noted that on remand the court "will be free to vacate its June 18, 1993, decision and reenter its December 14, 1993, decision, or otherwise act as it sees fit." Order (Fed.Cir.), No. 92–1462, –1480, filed March 21, 1994, at p. 4, 22 F.3d 1105.

## III. *DISCUSSION*

The following questions are before the court. First, whether the court should grant Ogilvie's motion for final judgment? Second, whether either Manildra or Ogilvie is entitled to attorneys' fees in light of Manildra I, II, and III? Third, whether the court should cancel Supersedeas Bond I? Fourth, whether the court should cancel Supersedeas Bond II? Fifth, whether the court should deny or retax costs to Manildra? Sixth, whether the court should grant Ogilvie's motion to correct inventorship?

### A. *Motion for Final Judgment*

Ogilvie moves for final judgment noting that with its March 21, 1994, orders, the Federal Circuit clarified the status of the instant case and authorized the court to resolve the remaining issues related to attorneys' fees, costs, inventorship, and Supersedeas Bonds I and II. Specifically, Ogilvie requests the court resolve these issues in a single judgment. Manildra joins Ogilvie's request for a single judgment resolving the issues related to attorneys' fees and supersedeas bonds, opposes Ogilvie's motion to deny or retax costs, and neither joins nor opposes Ogilvie's motion to correct inventorship. The court grants Ogilvie's motion to the extent it seeks resolution of these issues in one judgment; however, the court addresses the merits of each remaining issue individually in subsections B through F below.

### B. *Attorneys' Fees*

On June 15, 1992, the court determined Manildra was entitled to its attorneys' fees. Manildra I ensued. On June 18, 1993, the court calculated the amount of the fee award. Manildra II ensued. On June 22, 1993, the Federal Circuit decided Manildra I overturning the money judgment and remanding the attorneys' fees question. On December 14, 1993, the court reviewed the fee award in light of Manildra I. After reviewing the issues anew, the court vacated the June 18, 1993, award, denied Manildra's motion for fees, and denied Ogilvie's motion to reconsid-

er its request for fees related to the mistrial. Manildra III ensued. On March 21, 1994, the Federal Circuit issued two orders in which they dismissed Manildra II without prejudice and Manildra III for lack of jurisdiction. The Federal Circuit also held that the pendency of Manildra II divested the court of jurisdiction to issue the December 14, 1993, Memorandum and Order. As a result, several motions are once again before the court. They are as follows: (1) Manildra's motion to award attorneys' fees (Doc. 1089); (2) Ogilvie's motion to reconsider awardability of fees and correct inventorship (Doc. 1338);[1] and (3) Ogilvie's motion to reconsider the denial of fees for the mistrial. The court previously addressed these motions in the December 14, 1993, Memorandum and Order. After again reviewing the issues, the court finds no reason to depart from the conclusions reached in that Memorandum and Order.

1. ***Review of the Fees Award in Light of Manildra I***

On June 15, 1992, the court granted Manildra's motion to award attorneys' fees (Doc. 1089).[2] The court based the attorneys' fees award on 15 U.S.C. § 1117(a) and 35 U.S.C. § 285. The Federal Circuit reversed the award to the extent it was based on 15 U.S.C. § 1117(a). Additionally, to the extent the award was based on 35 U.S.C. § 285, the Federal Circuit vacated the award and remanded the issue for reconsideration in light of its opinion.

Pursuant to 35 U.S.C. § 285, a court may award reasonable attorneys' fees to a prevailing party in "exceptional" cases. In order for a case to be considered "exceptional," "[t]here must be some finding of unfairness, bad faith, or inequitable conduct on the part of the unsuccessful patentee." *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364–1365 (Fed.Cir.), *cert. denied*, 498 U.S. 851, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990) (quoting *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 713 (Fed.Cir.1983)).

In the memorandum and order filed June 15, 1992 (Doc. 1162), the court held that Ogilvie acted in bad faith, thereby entitling Manildra to a fees award under 35 U.S.C. § 285. The sole reason the court held that Ogilvie acted in bad faith was an inference from the jury's verdict. Specifically, the court reasoned as follows:

> In reaching its verdict that Ogilvie had committed unfair competition in the form of injurious falsehood, and that Ogilvie had intentionally interfered with Manildra's prospective economic advantage, the jury presumptively found that Ogilvie's conduct was *intentional and malicious.* [Citation omitted]. Because the Lanham Act is essentially a federally codified version of unfair competition, the court finds the jury's verdict to be sufficient to warrant a finding that Ogilvie's violation of the Lanham Act was *willful or intentional,* thereby rendering this case exceptional within the meaning of 15 U.S.C. § 1117(a). Accordingly, the court finds that Manildra is entitled to recover attorneys' fees under Section 1117(a) of the Lanham Act. *Similarly, the court finds that such a finding of intentional or malicious conduct is the equivalent of a finding of bad faith, thereby warranting an award of attorneys' fees under the [sic] 35 U.S.C. § 285.*

Memorandum and Order, No. 86–2457–S, filed June 15, 1992, at p. 29 (emphasis added). To support the inference of bad faith, the court pointed to nothing but the jury's findings on the injurious falsehood, tortious interference, and Lanham Act claims. That is, the court's finding of bad faith amounted to nothing more than an inference from the jury's findings on the injurious falsehood, tortious interference, and Lanham Act

1. In this subsection, the court addresses only the attorneys' fees portion of Ogilvie's motion. The inventorship issue is addressed in subsection F.

2. Manildra moved for fees pursuant to the following three statutory provisions: (1) 28 U.S.C. § 1927; (2) 15 U.S.C. § 1117(a); and (3) 35 U.S.C. § 285. The court rejected Manildra's request under 28 U.S.C. § 1927. Memorandum and Order, filed June 15, 1992, at 29 n. 17. However, the court granted Manildra's 15 U.S.C. § 1117(a) request. The Federal Circuit subsequently reversed the § 1117(a) award. Order (Fed.Cir.), No. 92–1462, –1480, decided June 22, 1993, at p. 21. The only remaining basis on which to award fees is 35 U.S.C. § 285.

claims. The wrongful conduct inherent in each of these three claims supplied the basis for the court's determination that this case was exceptional within the meaning of 35 U.S.C. § 285.[3] Without the jury's findings as to these three claims, the court's inference of bad faith is unsupported.

On appeal, the Federal Circuit examined whether the record included evidence "legally sufficient in quantum" to support the jury's verdicts on the injurious falsehood, tortious interference, and Lanham Act claims. Specifically, the Federal Circuit focused on "the common thread of each of the [three] causes of action—namely, that all three require either falsity, whether literal or simply deceptive or misleading, or misconduct ('wrongful' elements)." Order (Fed. Cir.), No. 92–1462, –1480, decided June 22, 1993, at p. 16. By focusing its analysis on the "wrongful" nature of each claim, the Federal Circuit isolated the factor common to each claim from which the court inferred bad faith. Thus, the Federal Circuit's examination of the record in search of support for the " 'wrongful' elements" amounted to an examination of the record for evidence supporting the court's inference of bad faith.

After examining the entire record on appeal, which consisted of several thousand trial exhibits and some fifteen thousand pages of transcript, the Federal Circuit stated that "this case does not contain evidence sufficient to establish the critical 'wrongful' elements." *Id.* at 18. The Federal Circuit further wrote that "we conclude on this record that a reasonable jury could not have found Ogilvie liable to Manildra under the Lanham Act and the state law causes of action because the evidence on the 'wrongful' elements of those claims constitutes at most a 'mere scintilla.' " *Id.* at 19–20. As a result, the Federal Circuit reversed the court's denial of Ogilvie's motion for judgment as a matter of law and reversed the attorneys' fees award insofar as it was based on the Lanham Act. Additionally, the Federal Circuit vacated the 35 U.S.C. § 285 attorneys' fees award for reconsideration in light of its opinion.

After reconsideration, the court concludes that the original basis for the fees award no longer exists. The Federal Circuit's failure to find sufficient support for the "wrongful elements" of the Lanham Act and state law claims amounts to a failure of support for this court's inference of bad faith. Since the court based its 35 U.S.C. § 285 award solely on an inference from the "wrongful elements," and since the Federal Circuit found no sufficient basis in the record to support the jury's findings on those elements, the inference of bad faith is no longer justified. Therefore, the court must deny Manildra's motion for fees (Doc. 1089) unless Manildra convinces the court that the requirements of 35 U.S.C. § 285 remain satisfied notwithstanding the Federal Circuit's opinion.

To get fees under 35 U.S.C. § 285, Manildra must establish by clear and convincing evidence that this is an exceptional case. *See, e.g., Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed.Cir. 1992) (writing that "the exceptional nature of the case must be established by clear and convincing evidence"). Since Manildra argues that this case is exceptional because of Ogilvie's bad faith,[4] Manildra must establish by clear and convincing evidence that Ogilvie asserted its patent rights in bad faith. Despite the Federal Circuit's opinion, Manildra argues ample bases remain for awarding fees under 35 U.S.C. § 285. Manildra repeatedly contends that the jury found by clear and

3. In *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 713 (Fed.Cir.1983), the Federal Circuit explained that in order for a case to be "exceptional" within the meaning of 35 U.S.C. § 285 "[t]here must be some finding of unfairness, bad faith, or inequitable conduct on the part of the unsuccessful patentee." By inferring bad faith from the jury's findings on the state law and Lanham Act claims, this court broadly interpreted the above-quoted passage from *Stevenson*.

4. Specifically, Manildra argues that it is entitled to a fees award under 35 U.S.C. § 285 because Ogilvie asserted its patent rights in bad faith. Manildra contends that both the court and the jury found that Ogilvie acted in bad faith. The court already has addressed its prior finding of bad faith. More importantly, the court already has discussed why the Federal Circuit's opinion removed the basis for the court's finding of bad faith. Thus, the court will discuss only Manildra's contention that the jury found, by clear and convincing evidence, that Ogilvie acted in bad faith.

convincing evidence that Ogilvie asserted its patent claims in bad faith. As support for these contentions, Manildra points the court to the jury's answers to the following two questions in the verdict form and the following two instructions from the jury charge: (1) Verdict No. 18; Instruction No. 24; and (2) Verdict No. 22; Instruction No. 36.

After examining Manildra's arguments, the court concludes that Manildra has failed to carry its burden. Specifically, the court is unpersuaded by Manildra's argument that the jury's answers to Verdict No. 18 and Verdict No. 22 are tantamount to a finding by clear and convincing evidence that Ogilvie asserted its patent claims in bad faith. Nowhere does the verdict form specifically ask the jury whether Ogilvie asserted its patent rights in bad faith. However, the absence of such a question is not necessarily fatal to Manildra's argument of bad faith. The verdict form need not specifically ask whether a patentee asserted its rights in bad faith so long as the verdict form yields sufficient evidence from which the court may infer bad faith. A verdict form does not yield sufficient evidence as to bad faith unless the information it contains can be said to establish bad faith by clear and convincing evidence. The verdict form in the instant case yields evidence which possibly could lead one to question whether the jury believed Ogilvie acted in bad faith. However, it does not yield information which constitutes clear and convincing evidence of Ogilvie's bad faith. In short, the court believes that Manildra's argument relies too much on supposition and insufficiently supported interpretations of the verdict form.

The court has examined the alternative bases proposed by Manildra; however, the court is unpersuaded these bases are sufficient to classify this case as "exceptional" within the meaning of 35 U.S.C. § 285. Furthermore, the court does not find independently an additional basis from which it can infer that Ogilvie asserted its patent claims in bad faith. Therefore, stripped of the previous basis for an inference of bad faith, and unconvinced of any additional basis sufficient to support a finding of bad faith, the court holds this case is not exceptional within the meaning of 35 U.S.C. § 285. Manildra's request for fees under 35 U.S.C. § 285 (Doc. 1089) is denied.

2. ***Ogilvie's Request for Fees for the Mistrial***

In its motion to reconsider the awardability of fees, Ogilvie requests the court reconsider its previous denial of fees for the mistrial. In the Memorandum and Order filed August 23, 1991, the court denied Ogilvie's initial request for mistrial-related fees. *Manildra Milling Corporation v. Ogilvie Mills, Inc.*, 782 F.Supp. 102, 104 (D.Kan. 1991). The court specifically found that the situation did not warrant the award of attorneys' fees. In the Memorandum and Order filed May 12, 1993, the court reaffirmed its position on Ogilvie's request for fees.[5] In its latest motion for reconsideration, Ogilvie once again renews its request for fees. Ogilvie presents, and the court is aware of, no reason now to depart from its previous position, a position which has been stated clearly twice before, and award Ogilvie its mistrial-related attorneys' fees. Ogilvie's arguments are unpersuasive. The request for reconsideration is denied.

C. ***Supersedeas Bond I***

As previously noted, the jury awarded Manildra various money damages which Ogilvie attacked with several post-trial motions. The court denied Ogilvie's motions. Ogilvie appealed, initiating Manildra I, and filed Supersedeas Bond I to secure the money judgment pending appeal. On June 22, 1993, the Federal Circuit reversed the money judgment. Manildra then petitioned for *certiorari.* The Supreme Court denied Manildra's petition February 23, 1994. Manildra no longer opposes Ogilvie's motion to cancel. No grounds exist that warrant maintaining Supersedeas Bond I. Supersedeas Bond I is canceled.

5. In that Memorandum and Order, the court wrote as follows: "[t]he court denies Ogilvie's request to award it attorneys' fees for defending the mistrial." Memorandum and Order (Doc. 1303), filed May 12, 1993, at p. 8 n. 2.

### D. *Supersedeas Bond II*

On June 18, 1993, the court calculated the amount of Manildra's attorneys' fees award. Ogilvie immediately appealed initiating Manildra II. To secure the award pending appeal, Ogilvie posted Supersedeas Bond II. On appeal, Ogilvie moved to cancel Supersedeas Bond II. Although the Federal Circuit denied Ogilvie's motion to cancel, it authorized the court on remand to consider the motion. In its motion for final judgment, Ogilvie again moves for cancellation of Supersedeas Bond II. Manildra does not oppose. Supersedeas Bond II is canceled.

### E. *Costs*

On November 3, 1993, Manildra submitted a bill of costs seeking $190,393.74. On January 3, 1994, the clerk taxed costs against Ogilvie in the full amount sought. Ogilvie timely moved to deny or retax costs January 10, 1994, arguing as follows: (1) Manildra is not a prevailing party; (2) the court should exercise its discretion to deny costs; and (3) various items included in the bill of costs are not taxable.

#### 1. *Is Manildra a Prevailing Party?*

The clerk taxed costs pursuant to Federal Rule of Civil Procedure 54(d)(1). Fed.R.Civ.P. 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." A prevailing party, for purposes of Fed.R.Civ.P. 54(d), is a party in whose favor judgment is rendered. *Green Construction Company v. Kansas Power & Light Co.,* 153 F.R.D. 670, 674 (D.Kan.1994) (citing *d'Hedouville v. Pioneer Hotel Co.,* 552 F.2d 886, 896 (9th Cir.1977); *Sperry Rand Corp. v. A-T-O, Inc.,* 58 F.R.D. 132, 135 (E.D.Va.1973); 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil 2d* § 2667, at p. 178 (1983)). Traditionally, this means the party who won at trial, whether or not that party prevailed on all issues, and regardless of the amount of damages awarded. *Green Construction,* 153 F.R.D. at 674 (citing *American Ins. Co. v. El Paso Pipe & Supply Co.,* 978 F.2d 1185, 1192–93 (10th Cir.1992); Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. 553, 564 (1984); 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2667, at pp. 180–87).

In *Studiengesellschaft Kohle v. Eastman Kodak,* 713 F.2d 128 (5th Cir.1983), Studiengesellschaft Kohle ("Kohle") sued Eastman Kodak ("Kodak") for patent infringement and Kodak counterclaimed arguing invalidity and noninfringement. The trial court found for Kodak on the counterclaim issues. 713 F.2d at 130. The trial court entered final judgment holding that Kodak had not infringed Kohle's patents and that two of the patents-at-issue were invalid. *Id.* at 130–31. The trial court also awarded Kodak its costs. *Id.* at 131. Kohle appealed the award of costs arguing Kodak was not a prevailing party. *Id.* The court affirmed holding that the trial court did not abuse its discretion because "[a]fter some nine years of litigation, not only may Kodak continue to use its polymer process free from charges of patent infringement, it has also won declarations that two of SGK's patents are invalid." *Id.* at 132.

In the instant case, Manildra sought a declaration that several of Ogilvie's patents were invalid and not infringed by Manildra and money damages for injuries allegedly caused by Ogilvie's activities related to ownership of the patents. Ogilvie counterclaimed alleging infringement. At trial, Manildra received a declaration that the patents were invalid and not infringed and a money judgment based on the jury's findings that Ogilvie violated the Lanham Act and Kansas common law. Manildra also prevailed on Ogilvie's counterclaim. In Manildra I, the Federal Circuit reversed as to the Lanham Act and common law claims and vacated the money judgment. Ogilvie now argues Manildra is not a "prevailing party" within the meaning of Fed.R.Civ.P. 54(d)(1) because Manildra ultimately received only a declaration; not a judgment altering the legal relationship between it and Ogilvie.

Ogilvie relies heavily, indeed, almost exclusively, on *Farrar v. Hobby,* — U.S. —, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In *Farrar,* the United States Supreme Court examined the meaning of the term "prevail-

ing party" as used in 42 U.S.C. § 1988.[6] After examining several of its opinions interpreting 42 U.S.C. § 1988, the Supreme Court synthesized their holdings as follows: "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." — U.S. at —, 113 S.Ct. at 573, 121 L.Ed.2d at 503. It specifically held that a plaintiff who wins nominal damages is a prevailing party under 42 U.S.C. § 1988. *Id.* at —, 113 S.Ct. at 573, 121 L.Ed.2d at 504.

The instant case does not involve nominal damages. Instead, the court must determine whether a party that wins no money judgment but receives a hard fought declaration that its competitor's patents are invalid and have not been infringed, and also survives the competitor's counterclaim of infringement, has "prevailed" within the meaning of Fed.R.Civ.P. 54(d). Despite Ogilvie's repeated assertions that Manildra has won but a technical victory, the fact remains that Manildra successfully challenged several of Ogilvie's patents winning a declaration of invalidity and now may use its production process free from risk of infringement and without the necessity of obtaining a license. As a result, although Manildra's suit ultimately produced no money judgment, it did provide Manildra significant latitude with respect to one of its competitors. Thus, essentially, the suit stripped Ogilvie of a competitive edge vis-a-vis Manildra with the result that Ogilvie and Manildra play on a more level field. Ogilvie cites no authority on point and, given the outcome, the court does not read *Farrar* to require a finding that Manildra was not a prevailing party. Accordingly, the court finds Manildra's success sufficient to make it a prevailing party under Fed.R.Civ.P. 54(d)(1).

## 2. *Discretionary Denial of Costs*

Ogilvie next argues equitable grounds exist requiring the court to exercise its discretion to deny costs. More specifically, Ogilvie argues Manildra's bill should be denied because of the following: (1) Manildra injected unmeritorious issues which unnecessarily prolonged the trial; (2) the case was close and difficult; (3) Manildra received only insignificant relief; and (4) Ogilvie litigated in good faith.

The court has broad discretion in deciding whether to impose costs under Fed. R.Civ.P. 54(d). *Roberts v. Madigan,* 921 F.2d 1047, 1058 (10th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992). *Cf.* J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 54.70[4] (2d ed. 1988) (explaining that "[w]hen the court exercises its discretion the identification of the prevailing party may become so unimportant as to be almost immaterial"). A prevailing party is presumably allowed all its costs unless there are grounds for penalizing that party. *Young v. Roberts,* 129 F.R.D. 672, 673 (D.Kan.1990) (citing *True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 509–10 (10th Cir.1979)). *See also Serna v. Manzano,* 616 F.2d 1165, 1167–68 (10th Cir.1980) (writing that "[t]he apparent intendment of Rule 54(d) is that the prevailing party is presumptively entitled to costs, and that it is incumbent on the losing party to overcome such presumption, since the denial of costs is in the nature of a penalty"). The reasons presented by Ogilvie are insufficient to overcome the presumption and do not justify penalizing Manildra. Therefore, after examining the litany of reasons Ogilvie cites for denying Manildra's costs, the court declines to exercise its discretion to deny costs across-the-board.

## 3. *Specific Items Challenged as Untaxable*

Finally, Ogilvie argues that if costs are to be awarded under Fed.R.Civ.P.

6. *Farrar* is applicable here because an award of fees under 42 U.S.C. § 1988 requires the court first to determine whether the movant is a "prevailing party," which is the same determination that must be made prior to an award of costs under Fed.R.Civ.P. 54(d)(1). *See Farrar,* — U.S. at —, 113 S.Ct. at 577–78, 121 L.Ed.2d at 509 (O'Connor, J., concurring); *Studiengesellschaft Kohle,* 713 F.2d at 13 (discussing applicability of the Supreme Court's 42 U.S.C. § 1988 "prevailing party" analysis in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), when making a Fed.R.Civ.P. 54(d) determination).

54(d)(1), the court should carefully review those assessed by the clerk. In conducting such a review, the court makes a *de novo* determination. *Green Construction,* 153 F.R.D. at 674. Fed.R.Civ.P. 54(d)(1) provides that costs shall be allowed to the prevailing party "unless the court otherwise directs." Thus, taxation of costs rests within the court's sound discretion. Section 1920, Title 28, United States Code, "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–442, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). A finding that a requested cost is statutorily authorized creates a presumption favoring its award. *Green Construction,* 153 F.R.D. at 675. The amount of such cost, however, still must be carefully scrutinized to ensure that it is reasonable. *Griffith v. Mt. Carmel Medical Center,* 157 F.R.D. 499, 502 (D.Kan. 1994).

The court's review focuses on two specific categories of costs: (1) trial and deposition transcripts taxed under 28 U.S.C. § 1920(2); and (2) copies and "exemplifications" taxed under 28 U.S.C. § 1920(4).

**a. *Trial and deposition transcripts***

Ogilvie challenges the award of $82,754.93 for transcript costs: $43,677.50 for daily trial and $39,077.43 for deposition transcripts. Section 1920(2), authorizes the taxation as costs of the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "The language embraces both deposition costs and the costs of trial transcript itself." Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. at 567. Taxation of costs for daily trial transcripts is within the court's discretion. *See, e.g., Oscar Gruss and Son v. Lumbermens Mut. Cas. Co.,* 422 F.2d 1278, 1284–85 (2d Cir.1970); *ABC Packard, Inc. v. General Motors Corp.,* 275 F.2d 63, 75 (9th Cir.1960). Similarly, the court has great discretion to tax the cost of depositions if it determines that all or any part of the deposition was necessarily obtained for use in the case, even if not actually presented at the trial itself. *Green Construction,* 153 F.R.D. at 677.

Ogilvie first challenges the award of costs for daily trial transcripts. "To award this premium for daily production, a court must find that daily copy was necessarily obtained, as judged at the time of transcription." *U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1248 (10th Cir. 1988).[7] As a general rule, taxation of costs for daily copy is not allowed absent prior court approval. *Griffith,* 157 F.R.D. at 506. "However, '[i]f the issues in [the] case were so complex as to justify overlooking the lack of pretrial approval, a court [can use] its discretion to award the cost where daily copy proved invaluable to *both* the counsel *and* the court.'" *Id.* (quoting Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. 553, 568).

In *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.,* 663 F.Supp. 1360, 1458 (D.Kan. 1987), *aff'd in part remanded in part,* 899 F.2d 951 (10th Cir.1990), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990), following a "lengthy" trial and "significant period" of jury deliberation, the Honorable Patrick F. Kelly, current Chief Judge, allowed plaintiffs costs for daily transcript. Chief Judge Kelly explained that during trial he encouraged the parties to use daily transcript. 663 F.Supp. at 1458. He concluded that daily transcript assisted both the court and the parties. *Id.* Specifically, he found as follows:

> [t]he daily trial transcript was clearly necessary for proper preparation and effective

7. More specifically, the Tenth Circuit explained as follows:

> "[n]ecessarily obtained" does not mean that the materials and services obtained "added to the convenience of counsel ... and perhaps ... have made the task of the trial judges easier." [Citation omitted]. The most direct evidence of "necessity" is the actual use of materials obtained by counsel or by the court. [Citation omitted]. Though use at trial by counsel or the court readily demonstrates necessity, if materials or services are reasonably necessary for use in the case even though not used at trial, the court can find necessity and award the recovery of costs. [Citation omitted].

*U.S. Industries,* 854 F.2d at 1245–46.

presentation of the case. The weeks of testimony before this jury included expert testimony on complex economic issues, financial matters, and definitional terms. The daily transcript allowed both parties to bring relevant issues into focus, to better prepare factual testimony for presentation to the jury, to avoid repetitive testimony, and to generally expedite the trial. *Id.*

In the instant case, Manildra seeks to recover a total of $43,677.50 [8] for daily trial transcripts from 94 days of trial: 17 days in March, 1991, and 77 days from August, 1991, through January, 1992. To establish necessity, Manildra points to the length of testimony given by individual witnesses, the complexity of the issues litigated, and the overall length of the trial. Although Manildra did not seek, and the court did not give, prior approval, the court finds that the daily transcripts were necessarily obtained and invaluable to both the court and the parties. It is beyond dispute that the issues litigated were complex and the trial lengthy. Daily transcripts helped to focus the issues, avoid repetitive testimony, and expedite the trial. Not only were the transcripts vital to the parties' preparation and presentation of the case, but they also proved critical to the court's management of the litigation. Without the transcripts, the court is convinced the trial would have been almost unmanageable. Manildra is allowed $43,667.50 for daily transcripts. *Cf. Brager & Co., Inc. v. Leumi Securities, Corp.,* 530 F.Supp. 1361, 1366 (S.D.N.Y.1982) (explaining that length and complexity of the case made daily copy necessary), *aff'd,* 697 F.2d 288 (2d Cir.1982); *Kaiser Industries Corp. v. McLouth Steel Corp.,* 50 F.R.D. 5, 9 (E.D.Mich.1970) (pointing to length and complexity of trial as evidence that daily transcript were reasonably necessary).

Ogilvie also challenges the award of costs for deposition transcripts. The standard for determining whether deposition expenses are taxable is whether the depositions were "necessarily obtained for use in the case." *Miller v. City of Mission, Kan.,* 516 F.Supp. 1333, 1340 (D.Kan.1981). The court must determine whether the depositions reasonably seemed necessary at the time they were taken. 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2676, at p. 341.

The clerk taxed $39,077.43 for deposition transcripts of 56 witnesses. Manildra admits that only 45 transcripts were used at trial. Ogilvie argues unused transcripts are untaxable. Although use at trial is direct evidence of necessity, an item still may be reasonably necessary for use in the case even if unused at trial. *U.S. Industries,* 854 F.2d at 1245–1246. *Cf. Syntex Ophthalmics, Inc. v. Novicky,* 795 F.2d 983, 986 (Fed.Cir.1986) (explaining that § 1920(2) "expressly allows costs of transcripts 'necessarily obtained for use *in the case*' (emphasis added), not only for use 'at the trial' "). Manildra contends that the 11 depositions were necessarily obtained because, at the time the depositions were taken, the deponents were potential trial witnesses whose deposition testimony was necessary to the parties' presentation of the case. In support, Manildra submits the affidavit of Murray J. Belman, a partner in the law firm of Thompson & Mitchell, counsel for Manildra, who affirms that the eleven depositions "were believed to be necessary for trial at the time they were taken." Manildra's Memorandum in Response (Doc. 1364), filed January 28, 1994, at Exhibit 3. After reviewing the parties' submissions, the court finds Manildra's showing persuasive. More particularly, the court finds that the depositions were not taken merely for convenience or for investigative purposes, but that at the time they were taken they appeared reasonably necessary for the proper prosecution of the case. Manildra is allowed $39,077.43 for deposition transcripts. *Cf. Tang How v. Edward J. Gerrits, Inc.,* 756 F.Supp. 1540, 1545–46 (S.D.Fla.1991) (stating that to award costs for deposition transcripts, the court first has to determine whether depositions appeared reasonably necessary at the time they were taken), *aff'd,* 961 F.2d 174 (11th Cir.1992).

8. Ogilvie suggests $9,762 is more appropriate. Apparently, Ogilvie arrives at this figure by calculating the number of pages actually used during the trial and in post-trial motions and then multiplying this number by a reduced rate. Ogilvie's analysis is thorough but unpersuasive.

**b. *Copies and "exemplifications"***

Ogilvie challenges the award of $105,798.04 for copies and "exemplification": $93,204.55 for copies and $12,593.49 for "exemplification." Section 1920(4) authorizes the taxation as costs of the "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Ogilvie argues these costs were not incurred for items necessarily obtained for use in the case.

Manildra requests $93,204.55 "for copies which have been made during the five years of this litigation and the two trials." [9] Manildra's Bill of Costs (Doc. 1353), filed January 3, 1993, at p. 5. "Like depositions, the underlying documents need not be introduced at trial in order for the cost of copying them to be recoverable." *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1410 (7th Cir.1991). However, where copies are made for the mere convenience of counsel they are not reimbursable. *American Key Corp. v. Cumberland Associates,* 102 F.R.D. 496, 499 (N.D.Ga.1984). Section 1920(4) does not authorize taxation of every copy made, but only those necessarily obtained for use in the case. In its bill, supporting memorandum, and memorandum in response to Ogilvie's motion, Manildra does nothing more than reiterate the bald assertion that it incurred in excess of $90,000.00 in "necessary" copying expenses. "The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' is not sufficient to overcome [a non-prevailing party's] objections. Some further showing is necessary." *Id.* Manildra's showing consists only of several tables, separated by law firm, which list the months in which certain costs were incurred for "copies." These tables shed no light on the critical inquiry: whether the copies were necessarily obtained for use in the case. Manildra fails to come forward with any showing as to the nature of the documents copied or how they were necessary for use in the case. While it would be unreasonable to require a prevailing party to identify every photocopy made for use in the case, simply attributing an otherwise undocumented and unsubstantiated figure between either of two law firms is an exercise in generality inadequate to satisfy § 1920(4). Manildra's request to tax $93,204.55 for copies is disallowed. *Cf. Zapata Gulf Marine v. P.R. Maritime Shipping Auth.,* 133 F.R.D. 481, 484 (E.D.La.1990) (disallowing $96,345 for copies where prevailing party provided court insufficient information about what was copied or how the copy was used); *Walker v. Borden, Inc.,* 115 F.R.D. 471, 473 (S.D.Miss. 1986) (disallowing bill for copies where prevailing party submitted inadequate documentation and refusing to take judicial notice that " 'a case of this magnitude will generate over 250 pages of paper which must be copied at some point' ").

Manildra also requests $12,593.49 for fees for "exemplification" under § 1920(4). More specifically, Manildra seeks to recover the cost of producing demonstrative exhibits—such as enlargements and transparencies—which it contends were necessary given the complexity of the issues litigated.[10] Although not absolutely necessary, courts generally require litigants to obtain authorization before incurring great expense for exemplification. *See, e.g., Northcross v. Board of Education,* 611 F.2d 624, 640 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980); *Miller,* 516 F.Supp. at 1339–40. *But see Studiengesellschaft Kohle,* 713 F.2d at 132–133 (applying requirement of prior approval as an absolute rule). Manildra did not seek court approval prior to incurring costs for exemplification. Additionally, the court is unconvinced these expenses were necessary as opposed to merely illustrative of expert testimony, other evidence, or argumentative matter. Manildra's request to tax $12,593.49 for exemplification is disallowed. *Cf. Miller,* 516 F.Supp. at 1339–40.

9. Ogilvie has objected timely and, to the extent possible given the generality of Manildra's bill and related memoranda, specifically to Manildra's request.

10. " 'Exemplification' has been interpreted to embrace all manner of demonstrative evidence, such as models, charts, photographs, illustrations, and other graphic aids." Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. at 584–85.

### F. *Motion to Correct Inventorship*

Ogilvie reasserts its motion to correct inventorship to add Donald L. Johnson and Dennis M. Adkesson as joint inventors to U.S. Patents 3,901,725 and 3,951,948 and Dennis M. Adkesson as a joint inventor to U.S. Patent 4,280,718. Originally, Ogilvie's motion was denied June 6, 1989, by the Honorable Earl E. O'Connor, then Chief United States District Judge. On August 6, 1990, Judge O'Connor reconsidered the denial choosing, instead, to defer ruling and take the motion under advisement pending trial.[11] Following trial, Ogilvie renewed its motion to correct inventorship. After examining the question, the court wrote as follows:

> [w]hile the court finds that the omission of Dennis M. Adkesson as an inventor to U.S. Patents 3,901,725, 3,951,948, and 4,280,718 and the omission of Donald L. Johnson as a named inventor in U.S. Patents 3,901,725 and 3,951,948 were errors of oversight which occurred without deceptive intent, the court finds that this motion is now moot as it relates to the patent claims-in-issue. [Citation omitted]. Accordingly, the court will deny Ogilvie's motion to correct inventorship as moot.

*Manildra Milling Corporation v. Ogilvie Mills, Inc.,* 797 F.Supp. 874, 890 (D.Kan. 1992). Ogilvie appealed the denial. The Federal Circuit affirmed the denial as to those claims found invalid, but stated that on remand Ogilvie again would have the opportunity to renew its motion as to the unadjudicated claims of U.S. Patents 3,901,725, 3,951,-948, and 4,280,718. Ogilvie has renewed its motion.

The controlling statute for correction of inventorship is 35 U.S.C. § 256. Section 256 provides as follows:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such inventor.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

The court, in its discretion, may order the requested correction if it appears the movant can prove by clear and convincing evidence that the following three elements of 35 U.S.C. § 256 are satisfied: (1) the omitted person was a true joint inventor; (2) the joint inventor was omitted by error; and (3) the omission was without deceptive intent on his part. *Hamilton Cosco, Inc. v. Century Products, Inc.,* 305 F.Supp. 1271, 1272 (N.D. Ohio 1969).

In the December 14, 1994, Memorandum and Order (Doc. 1346), the court acknowledged that Ogilvie established the second and third elements. However, the court ordered the parties to submit supplemental briefs as to the first element. After reviewing the briefs, and noting there is no opposition to Ogilvie's motion, the court finds Mr. Johnson and Mr. Adkesson were joint inventors of the patents-at-issue. Accordingly, Ogilvie's motion to correct inventorship is granted.

## IV. *CONCLUSION*

**IT IS BY THE COURT THEREFORE ORDERED** that Ogilvie's motion for final judgment (Doc. 1377) is granted to the extent it seeks resolution of the remaining attorneys' fees, costs, supersedeas bond, and cor-

11. Judge O'Connor noted that in the Memorandum and Order issued June 6, 1989, he had been "'satisfied that Messrs. Adkesson and Johnson were joint inventors of the patents at issue and that the failure to name them as joint inventors was not with deceptive intention.'" Memorandum and Order, No. 86-2457-O, filed August 6, 1990, at p. 6 (quoting Memorandum and Order, No. 86-2457-O, filed June 6, 1989). However, he concluded that "[i]n light of the complex factual issues involved in this matter, the court finds it appropriate to defer a ruling on these issues until after the trial of this matter." *Id.*

**1430**

rection of inventorship issues in a single judgment. The merits of each issue are determined separately as explained herein and set forth below.

**IT IS FURTHER ORDERED** that, after reconsideration in light of and pursuant to Manildra I, Manildra's motion to award attorneys' fees (Doc. 1089) is denied.

**IT IS FURTHER ORDERED** that Ogilvie's motion to reconsider awardability of fees and correct inventorship (Doc. 1338) is granted-in-part. Specifically, it is granted to the extent Ogilvie requested that the court reconsider the awardability of fees. Consequently, the judgment entered on the docket June 18, 1993, awarding Manildra $3,144,-570.12 is vacated.

**IT IS FURTHER ORDERED** that Ogilvie's motion to reconsider awardability of fees and correct inventorship (Doc. 1338) is denied-in-part. Specifically, it is denied to the extent Ogilvie requested that the court reconsider the previous denial of its mistrial-related attorneys' fees.

**IT IS FURTHER ORDERED** that Ogilvie's motion to reconsider awardability of fees and correct inventorship (Doc. 1338) is granted-in-part. Specifically, Ogilvie's motion is granted to the extent Ogilvie requests that the court correct inventorship. Accordingly, the Commissioner of Patents and Trademarks shall issue a certificate adding Dennis M. Adkesson as an inventor on U.S. Patents 3,901,725, 3,951,948, and 4,280,718; and Donald L. Johnson as an inventor on U.S. Patents 3,901,725 and 3,951,948.

**IT IS FURTHER ORDERED** that Ogilvie's supersedeas bond in the amount of $5,937,500.00 ("Supersedeas Bond I") is canceled.

**IT IS FURTHER ORDERED** that Ogilvie's supersedeas bond in the amount of $3,977,902.00 ("Supersedeas Bond II") is canceled.

**IT IS FURTHER ORDERED** that Ogilvie's motion to deny or retax costs (Doc. 1354) is granted-in-part and denied-in-part. Consequently, the amount of costs assessed by the clerk shall be reduced by $105,798.04: $93,204.55 for copies and $12,593.49 for exemplification. Under the revised bill of costs, the clerk shall tax against Ogilvie $84,-595.70: $731.50 for fees of the clerk, $43,-677.50 for daily trial transcripts, $1,109.27 for witness fees, and $39,077.43 for deposition transcripts.

**IT IS FURTHER ORDERED** that Ogilvie's motions to file reply briefs (Docs. 1367, 1368 and 1371) are granted.