**BATTENFELD OF AMERICA HOLD-ING COMPANY, INC. and SMS Capital Corp., Plaintiffs,**

v.

**BAIRD, KURTZ & DOBSON, Defendant/Third–Party Plaintiff,**

v.

**Friedrich Theysohn GmbH et al., Third–Party Defendants.**

**No. 97–2336–JWL.**

United States District Court, D. Kansas.

Oct. 11, 2000.

■

documents reflect on their face the mental impressions, conclusions, opinions, or legal theories of Mr. Snyder.

Vivian Williams Addam, Shook, Hardy & Bacon L.L.P., Randall E. Hendricks, Phillip G. Greenfield, Leigh A. Bishop, Rouse, Hendricks, German, May & Shank, Scott M. Brinkman, Lewis, Rice & Fingersh, L.C., Kansas City, MO, James A. Snyder, Lathrop & Gage L.C., Overland Park, KS, John R. Gerstein, Ross, Dixon & Masback, Washington, DC, Timothy K. McNamara, Daniel L. McClain, L.J. Buckner, Jr., Lathrop & Gage L.C., Kansas City, MO, for Battenfeld of America Holding Co., Inc. and SMS Capital Corporation and Baird Kurtz & Dobson.

Michael T. Mills, Michael T. Mills, Chartered, McPherson, KS, for Horst Eigruber.

Stephen D. Root, McPherson, KS, pro se.

Mark D. Hinderks, Daniel D. Crabtree, Stinson, Mag & Fizzell, P.C., Leawood, KS, Frederick W. Chockley, Peder A. Garske, Suvarna U. Rajguru, Baker & Hostetler LLP, Washington, DC, for Friedrich Theysohn and VGT AG, a German Corporation.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiffs Battenfeld of America Holding Company, Inc. and SMS Capital Corporation filed this negligence action against defendant accounting firm Baird, Kurtz & Dobson ("BKD") arising out of accounting and auditing services BKD provided to American Maplan Corporation ("AMC"), a corporation purchased by plaintiffs from AMC's sole shareholder Friedrich Theysohn GmbH ("FTG"), which in turn was owned by VGT AG ("VGT"). According to plaintiffs, BKD should have discovered that certain individu-als had made false entries in AMC's financial records, resulting in a material overstatement of assets, equity and earnings and a material understatement of liabilities. In turn, BKD filed a third-party complaint against, *inter alia*, FTG and VGT, alleging that those entities directed the fraudulent conduct and should be held responsible for any damages resulting from that conduct.

The case was tried to a jury over the course of four weeks. At the close of the evidence, while the jury was deliberating, the plaintiffs and BKD reached a settlement with respect to plaintiffs' claims. The jury found in favor of the third-party defendants on BKD's claims. This matter is presently before the court on BKD's motion to retax costs (doc. #634). As set forth in more detail below, BKD's motion is granted in part and denied in part.

In their bill of costs, FTG and VGT requested the clerk to tax as costs the amount of $82,824.02. On June 15, 2000, the clerk filed a bill of costs and supplemental bill of costs awarding FTG and VGT a total of $82,107.02. BKD now requests that the court retax the costs. Specifically, BKD objects to the following as costs: $3,645.00 for technical support at trial; $3,805.00 for the creation of board exhibits used at trial; copying charges in the amount of $28,813.88 for certain documents and $1,723.95 for certain deposition transcripts; daily copy expenses in the amount of $12,544.89; and certain witness expenses.[1]

*Technical Support*

■ FTG and VGT seek to recover $3,456.00 for "technical support for operation of video deposition system" used at trial. In essence, FTG and VGT used the services of a consulting firm to present the video depositions of various witnesses at trial, including editing those videos during trial. While FTG and VGT concede that these costs are not expressly authorized by 28 U.S.C. § 1920, they nonetheless urge the court to exercise its discretion to award such costs. *See U.S.*

---

1. BKD also objects to FTG and VGT's request for the costs associated with obtaining an additional copy and ASCII diskette of a certain deposition ($210.55) and obtaining an expedited transcript of another deposition ($936.93). In response, FTG and VGT have withdrawn their claims for these costs. Thus, BKD's motion is granted with respect to these costs.

*Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1246 n. 29 (10th Cir.1988) (unusual or nonstatutory costs may be granted "where a sufficient showing of necessity is made"). The court, however, will sparingly exercise its discretion with regard to expenses not specifically allowed by statute. *See id.* at 1246.

■ The court declines to exercise its discretion here and grants BKD's motion with respect to these particular costs. Simply put, the court cannot conclude that these costs were "necessarily" incurred. According to FTG and VGT, the use of a professional video technician in this case was "necessary for an efficient presentation of the evidence and for the jury's understanding of the issues." The court readily acknowledges that FTG and VGT's presentation of video depositions at trial was both efficient and helpful.[2] The court also recognizes that, in appropriate cases, counsel may find it necessary to utilize such technology in order to increase his or her client's chance of prevailing before a jury. In this particular case, FTG and VGT's use of such technology may have even been a factor in the jury's ultimate decision to the extent FTG and VGT's evidence was presented more clearly and efficiently than BKD's evidence. Nonetheless, it does not necessarily follow that such costs should be shifted to BKD. *See Vornado Air Circulation Systems, Inc. v. Duracraft Corp.*, No. 92–1543–WEB, 1995 WL 794070, at *3 (D.Kan. Nov. 29, 1995) (while computer simulation exhibits were helpful to an un-

derstanding of the issues, they "were by no means necessary to the defendant's case").[3] In short, FTG and VGT have not shown the court that the use of a video technician at trial was "necessary" to their case.

*Board Exhibits*

■ FTG and VGT also seek to recover $3,805.00 for the creation of certain board exhibits used at trial. The reasonable cost of preparing maps, charts, graphs and kindred material is taxable, pursuant to 28 U.S.C. § 1920, when necessarily obtained for use in the case. *Mikel v. Kerr*, 499 F.2d 1178, 1182 (10th Cir.1974); 28 U.S.C. § 1920(4) (permitting clerk to tax as costs "fees for exemplification and copies of papers necessarily obtained for use in the case").[4] According to FTG and VGT, these board exhibits were "necessary" to an "effective and efficient" presentation of the evidence at trial. For the same reasons as set forth above in connection with FTG and VGT's request for costs associated with technical support, the court grants BKD's motion with respect to these costs. The court cannot conclude that the board exhibits were "necessarily" obtained for use in the case. Again, while FTG and VGT's use of such materials at trial may have helped the jury to understand the issues and, thus, may have ultimately helped FTG and VGT prevail before the jury, there has been no showing that these exhibits were "necessary" to FTG and VGT's case such that the costs should be shifted to BKD. At the

2. The video technician was able to edit video depositions on the spot and was able to pinpoint quickly relevant excerpts for use at trial.

3. In support of their argument that such costs are appropriately shifted to BKD, FTG and VGT direct the court only to a transcript of a hearing before United States District Judge Wayne R. Andersen in the Northern District of Illinois. In that case, *Elkay Manufacturing Co. v. Ebco Manufacturing Co.*, Judge Andersen granted Elkay's request for $24,248.28 for costs incurred in the use of sophisticated computer equipment to display exhibits during trial. The circumstances surrounding the use of the equipment in *Elkay*, however, are easily distinguished from the circumstances here. As Judge Andersen noted in his ruling, Elkay, the plaintiff, "could not have displayed the exhibits without the use of the equipment." Here, of course, FTG and VGT

could have displayed their video depositions without the aid of a video technician. Moreover, the defendant in *Elkay* used plaintiff's equipment a "fair amount" in presenting its case, too. Thus, Judge Andersen concluded that shifting the cost to the defendant-who had used the equipment itself-was not inappropriate. Finally, *Elkay* was a bench trial and Judge Andersen specifically noted that the use of the equipment assisted the court in understanding the evidence and in reaching its ultimate decision. Those considerations are simply not present here.

4. "Exemplification" has been interpreted to embrace all manner of demonstrative exhibits, including models, charts, photographs, illustrations, and other graphic aids. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F.Supp. 1417, 1428 n. 10 (D.Kan.1995) (citation omitted), *aff'd*, 76 F.3d 1178 (Fed.Cir.1996).

most, FTG and VGT's demonstrative exhibits merely illustrated various defenses and themes raised by FTG and VGT. For these reasons, the request is denied. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F.Supp. 1417, 1428 (D.Kan.1995) (denying request for costs associated with producing demonstrative exhibits where exhibits were "merely illustrative of expert testimony, other evidence, or argumentative matter"), *aff'd,* 76 F.3d 1178 (Fed.Cir.1996).

*Copying Charges*

■ In their bill of costs, FTG and VGT request the clerk to tax costs in the amount of $28,813.88 for copies of more than 120,000 documents produced by BKD during discovery and $1,723.95 for copies of certain deposition transcripts. Section 1920(4) allows for the taxation of "fees for exemplification and copies of papers necessarily obtained for use in the case." A copy is "necessarily obtained" within the meaning of section 1920(4) only where the court believes that its procurement was reasonably necessary to the prevailing party's preparation of its case. *See Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 407–08 (D.Kan.2000). FTG and VGT bear the burden of establishing that the costs fall within the provisions of section 1920. *See id.* at 406–07 (citations omitted).

■ FTG and VGT have not shown that the copies of the 120,000 documents were "necessarily obtained" for use in the case. They have simply submitted statements from copying services for thousands of copies, without identifying the use made of the copied materials. Moreover, the bill of costs submitted by FTG and VGT seeks reimbursement for "copies of documents produced by all parties (from BKD)" with no explanation or elaboration about the nature or use of the documents. While the court would not expect FTG or VGT to identify every photocopy made, the court does expect these parties to make some effort to identify the nature of the documents and the number of documents copied with respect to a particular subject. Without such information, the court cannot distinguish between copies "necessarily obtained" for use in the case and other copies. Because FTG and VGT have

failed to show that the copies were necessarily obtained, they cannot recover these costs. *See Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, No. 95–2366–JWL, 1997 WL 614317, at *1 n. 1 (D.Kan. Sept. 18, 1997) (although it was not necessary to decide the issue, the court "would have likely disallowed the entire amount sought for copying expenses because plaintiff has not broken down those expenses by document or type of document; the court is therefore unable to determine whether any of the copies were reasonably necessary"); *Green Construction Co. v. Kansas Power & Light Co.*, 153 F.R.D. 670, 683 (D.Kan.1994) (disallowing copying expenses where prevailing party merely submitted statements from copying services without identifying use made of the photocopied materials). BKD's motion is granted with respect to these copying charges.

■ FTG and VGT also seek to recover $1,723.95 for copies of six deposition transcripts of various expert and fact witnesses whose testimony pertained solely to the issue of whether BKD's audits of AMC met the relevant standard of care. According to BKD, the issue of its own negligence had nothing whatsoever to do with BKD's fraud and indemnity claims against FTG and VGT and, thus, FTG and VGT did not need to obtain copies of those depositions. In response, FTG and VGT point out that FTG had asserted a setoff claim against BKD, alleging that BKD negligently prepared for and negligently performed the financial audits of AMC and that BKD's negligence caused damage to FTG, as the former owner of AMC. Because of this setoff claim, then, FTG maintains that the issue of BKD's accounting malpractice was integral to FTG's defense. BKD does not address this argument in its reply brief. In the absence of any response from BKD, the court concludes that these costs are properly taxed to BKD. The issues raised in the depositions, primarily BKD's negligence, clearly related to FTG's setoff claim. As such, copies of those deposition transcripts were reasonably necessary to the preparation of FTG's defense. FTG has met its burden of showing that the costs fall within the purview of section 1920 and BKD's motion is denied with respect to these costs.

*Daily Trial Transcripts*

■ Next, FTG and VGT seek costs in the amount of $12,544.89 associated with obtaining daily trial transcripts. To award this "premium cost for daily production, a court must find that daily copy was necessarily obtained, as judged at the time of transcription." *See Manildra,* 878 F.Supp. at 1426 (citing *U.S. Indus., Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1248 (10th Cir.1988)). As a general rule, taxation of costs for daily copy is not allowed absent prior court approval. *Id.* (citation omitted). If, however, the issues in the case "were so complex as to justify overlooking the lack of pretrial approval, a court can use its discretion to award the cost where daily copy proved invaluable to both the counsel and the court." *Id.* (citation omitted); *accord U.S. Indus.,* 854 F.2d at 1248.

■ FTG and VGT concede that they did not ask the court, prior to trial, to approve the special expense of daily transcripts. *See U.S. Indus.,* 854 F.2d at 1247 (characterizing daily copy as a "special expense"). Nonetheless, they contend that obtaining daily copy was "invaluable" to both counsel and the court in light of the "multitude of testimony from the nine parties in the case." FTG and VGT further argue that

> [i]t was a fast-paced trial with numerous evidentiary issues that sprung up on a continual basis. Many of the evidentiary disputes were resolved because the parties referred to prior days' transcripts, thereby saving the Court and jurors time and ultimately expediting the resolution of the trial.

While the court expresses no opinion as to whether daily copy was necessary for counsel at trial, the court is in the best position to assess the value of the daily copy to it. *See id.* at 1248. Suffice it to say, daily copy was not necessary for the court's handling of the case. *See id.* The court cannot recall any occasions in which it even looked to daily copy for guidance in analyzing an evidentiary issue. While daily copy may have aided the parties in resolving various disputes amongst themselves, the court is fairly confident that it could have resolved those issues for the parties in the absence of daily copy. In short, this case was neither so complex nor so lengthy as to justify imposing such "special costs" on BKD. *Compare id.* at 1246 (affirming district court's denial of costs associated with daily copy in complex federal securities case where trial involved 11 defendants and jury deliberated for over one week) *with Manildra,* 878 F.Supp. at 1427 (allowing costs for daily copy in a case involving claims of patent infringement, antitrust violations, Lanham Act violations, and unfair competition where trial spanned 94 days over the course of eleven months and the court found that daily copy "proved critical to the court's management of the litigation").

*Witness Fees*

FTG and VGT seek to recover witness fees in the amount of $1,139.00 for travel, lodging and other expenses related to the deposition of Dr. Ernst Kruger (Dr. Kruger traveled from Germany to the United States for his deposition) and witness fees in the amount of $6302.69 in connection with Dr. Stefan Schatz's travel to and presence at trial. BKD contends that no costs should be allowed with respect to Dr. Kruger's deposition and that the costs associated with Dr. Schatz's presence at trial should be reduced by $1,089.00.

With respect to Dr. Kruger, BKD maintains that FTG and VGT cannot recover any fees because Dr. Kruger, as a party to the action, was not a "witness" entitled to recover expenses pursuant to 18 U.S.C. § 1821 and, in any event, FTG and VGT were ordered by the court during the discovery process to pay one-half of Dr. Kruger's expenses due to scheduling conflicts. In response, FTG and VGT simply rehash arguments that they made at the time the court issued its April 7, 1999 order that FTG and VGT pay half of Dr. Kruger's expenses. The court declines FTG and VGT's invitation to revisit that order. Rather, the court concludes that FTG and VGT's $1,139.00 liability, which arose from a discovery order, is separate and distinct from BKD's obligation to pay costs as determined by the court, which arises under Rule 54 and section 1920. *See Phillips USA, Inc. v. Allflex USA, Inc.,* No. 94–2012–JWL, 1996 WL 568814, at *2 (D.Kan.

Sept. 4, 1996). BKD's motion with respect to witness fees for Dr. Kruger is granted.

■ With respect to Dr. Schatz, BKD argues that FTG and VGT cannot recover witness fees for the nine days on which Dr. Schatz was present at trial in his capacity as corporate representative rather than in his capacity as a witness. Accordingly, BKD requests that Dr. Schatz's witness fee be reduced by $1,089.00.[5] According to FTG and VGT, costs for witness fees may be awarded for days a witness is not testifying but is "necessarily" attending trial. *See Green Construction Co. v. Kansas Power & Light Co.,* 153 F.R.D. 670, 679 (D.Kan.1994) ("[A]ttendance and subsistence allowances for witnesses are not restricted to the days the witness actually testifies, but may also be awarded for each day the witness necessarily attends trial, time spent during delays and temporary adjournments, and the time necessary for travel to and from the place of attendance."). Relying on this principle, FTG and VGT maintain that Dr. Schatz's attendance at trial for the nine days in question was "necessary." According to FTG and VGT:

> [I]t was necessary and imperative that Dr. Schatz be in attendance for the time at issue to hear the testimony of other witnesses, particularly Helmut Eschwey and Ulrich Hallemeier, witnesses who plaintiffs put forth to discuss the relationship between plaintiffs and VGT and, specifically, discussions that took place between representatives of plaintiffs and Dr. Schatz. Furthermore, as VGT's sole representative, it was important that the jury view Dr. Schatz. Dr. Schatz also had to hear the testimony of various witnesses put forth by plaintiffs and BKD in order to plan the defense of VGT, adequately prepare for his own testimony and rebut the allegations of plaintiffs and BKD.

FTG and VGT also maintain that Dr. Schatz had to be "on call" during the last week of trial because it was not possible to schedule Dr. Schatz's testimonial appearance with pre-cision and Dr. Schatz was traveling from Germany to testify.

The court rejects FTG and VGT's arguments. As an initial matter, Dr. Schatz could not have been in the courtroom to hear the testimony of other witnesses in his capacity as a witness because the parties had invoked Federal Rule of Evidence 615. Thus, the only explanation (and FTG and VGT seem to concede as much) is that Dr. Schatz was present in the courtroom in his capacity as a corporate representative. As such, Dr. Schatz is not entitled to witness fees. *See Sprague v. Elliott Mfg. Homes, Inc.,* Civ. A. No. 91–2286–GTV, 1992 WL 398441, at *1 (D.Kan. Dec. 22, 1992) (witness not entitled to fees and allowances for days when he attended court in his capacity as corporate representative); *Quigley v. General Motors Corp.,* Civ.A. No. 85–2458–S, at *1 (D.Kan. July 22, 1987) (disallowing fees for person who "was defendant's representative at trial, [as] parties to the litigation are not permitted to recover the cost of their own presence at trial."). BKD's motion is granted with respect to Dr. Schatz's fees; the fee shall be reduced by $1,089.00.

**IT IS THEREFORE ORDERED BY THE COURT THAT** BKD's motion to retax costs (doc. # 634) is **granted in part and denied in part.** The motion is denied with respect to FTG and VGT's request to recover $1,723.95 for copies of certain deposition transcripts and is otherwise granted. The parties shall submit a revised bill of costs, reflecting the reductions made in this order, to the clerk within twenty (20) days of the date of this order.

**IT IS SO ORDERED.**

---

**5.** This amount represents a $40 per day attendance fee plus a $81 per day subsistence allowance, multiplied by nine days.