# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2900

LARRY GWIN,

*Plaintiff-Appellee,*

*v.*

AMERICAN RIVER TRANSPORTATION
COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03-C-862—**Michael J. Regan**, *Judge.*

ARGUED FEBRUARY 9, 2007—DECIDED APRIL 10, 2007

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Larry Gwin worked as a tow-boat operator for American River Transportation Company ("Artco") until May 2003. He and five other former Artco employees filed suit in federal district court arguing that Artco fired them because they refused to perform duties they considered unsafe, in violation of 46 U.S.C. § 2114(a)(1)(B). After a 12-day trial, the jury returned a verdict in favor of Gwin, but against the other plaintiffs. Artco then filed a motion for judgment as a matter of law, a motion for costs, and a motion to compel payment for its experts' expenses. The district court denied Artco's motions and Artco appeals. For the following reasons, we

affirm the judgment of the district court and remand for a finding on costs.

## I. BACKGROUND

Artco operates towboats on the Mississippi River between St. Paul, Minnesota and New Orleans, Louisiana. Artco has two types of vessels: all-river vessels and lower-river vessels. The all-river vessels are smaller because they have to navigate through narrower passages in the river beginning just north of St. Louis. The lower-river boats are larger and travel only between St. Louis and New Orleans. Prior to 1999, the largest lower-river vessels towed forty barges, five long and eight wide.[1]

In 1999, Artco initiated a "six long" program meaning that its lower river vessels would push forty-eight barges, six long and eight wide. At that time, no other towboat company was pushing six long tows on the Mississippi River. Artco ran the program on a trial basis for six months and then adopted it as part of its regular business practice. Pilots and captains who wanted to participate in the program had to receive extra training, but were also paid a higher salary than those pilots and captains pushing smaller tows.[2] Artco maintains that at all times the six long program was voluntary.

Larry Gwin captained the Daniel MacMillan, a 10,500 horsepower, triple screw (three propellers) towboat, the

---

[1]  Each barge is approximately 200 feet long and 23 feet wide, weighing between 1,400 and 2,200 tons.

[2]  The pay scale was as follows: "C" captains and pilots pushed six long tows and were paid the highest salary. "B" captains and pilots operated all-river vessels and received the second highest pay. "A" captains and pilots who refused to operate the six long tows were paid the least.

largest size towboat on the river. Gwin was the Daniel MacMillan's captain for five and a half years and routinely pushed forty-barge tows between St. Louis and New Orleans. Gwin's supervisor, Port Captain Bruce Hussell, informed Gwin of the six long program. Hussell told Gwin that the program was voluntary but that Gwin should think about participating. Gwin eventually decided not to participate in the program because he thought that the program was unsafe. Gwin informed Hussell of his decision.

On January 16, 2002, Gwin received a written evaluation. Hussell rated Gwin's performance as "good" in 12 of 13 categories but rated his performance as "fair" in category #9, which was titled "does he/she operate the vessel to its full potential." Under the section titled "recommendations for improvement," Hussell wrote, "Other vessels in the class as the [Daniel MacMillan] take 46 loads southbound." On February 1, Gwin wrote Hussell a letter in response to the evaluation and sent copies to Artco's President and Vice President. Gwin wrote,

> As for #9 of the evaluation, this is an area which we have discussed on many occasions. You have asked me if I was willing to take 46 barges southbound. I advised you that the safe number of barges to navigate southbound on the Mississippi River is determined by the river conditions, but never more than 40 . . . . Some of the reasons I gave you for not wanting to take more than 40 barges southbound include my concern for the life and safety of my crew and my livelihood, i.e., my license. Concerning my license, each time we discussed me taking 46 barges southbound, you have been quick to say that this was my decision and was strictly voluntary. You stressed to me that it was not mandatory, not something Artco would force me to do.

Gwin testified that after he sent the letter, Hussell continued to ask him to push six long tows. Gwin again

told Hussell, "I thought we talked about this . . . I am not going to do it."

In January 2003, Gwin received another evaluation from Hussell. Hussell rated Gwin's performance as "good" in 11 of 13 categories. This time he received a "fair" rating for "learns new skills" and "does he/she operate the vessel to its full potential." Under recommendations for improvement, Hussell wrote, "Larry should put the effort to go to 6 long. As a Master on a very good vessel he should be heading in that direction." In April 2003, Hussell called Gwin and told him that he was being demoted to pilot. Thirty days later, Artco discharged Gwin through a letter indicating that he had been terminated because of a reduction in Artco's business.

Gwin and five other captains/pilots whom Artco had also laid off, sued Artco under 46 U.S.C. § 2114(a)(1)(B)—which forbids a person from discharging a seaman for refusing to perform duties ordered by his employer if the duties would result in serious injury—and various other federal and state common law theories. The statutory claims were tried to a jury during a 12-day trial beginning on February 27, 2006. Artco moved for judgment as a matter of law at the close of the plaintiffs' case. The district court took the motion under advisement. Artco renewed its motion at the close of its case. The Court sustained the motion as to one plaintiff who admitted he had been terminated for failing a drug test, but denied it as to the other five plaintiffs, including Gwin. The jury found for Gwin on his § 2114 claim, awarding him $10,000 in compensatory damages and $130,000 in punitive damages, but found for Artco on the other plaintiffs' claims. The district court entered judgment on the jury's verdict.

Artco filed three post-trial motions. First, it filed a motion renewing its motion for judgment as a matter of law against Gwin, arguing that Artco never "ordered" him

to push a six long tow. Second, it filed a motion for costs under Federal Rule of Civil Procedure 54(d) as the prevailing party on five of the six plaintiffs' claims and on the substantial part of Gwin's claim. Finally, it filed a motion for its retained and non-retained experts' fees, arguing that Artco had entered into an agreement with the plaintiffs that each party would pay the fees and expenses for the other party's experts.

On June 9, 2006, the district court held a hearing and denied all three of Artco's motions. On the motion for judgment as a matter of law, the district court held that a plaintiff suing under § 2114 does not need to show that the defendant explicitly used the word "order." The district court denied Artco's motion for costs, ruling that Rule 54's provision for an award of costs to the prevailing party was superceded by the provisions of § 2114 regarding attorney's fees and costs. The district court also held that it would not enforce any agreement between the parties regarding non-retained experts. Artco filed a notice of appeal.

## II. ANALYSIS

### A. Judgment as a matter of law

Artco argues that the district court erred by denying its motion for judgment as a matter of law because no reasonable juror could conclude that Artco ordered Gwin to push six long tows. This Court reviews the denial of a motion for judgment as a matter of law de novo. *DeBasio v. Ill. Cent. R.R.*, 52 F.3d 678, 682 (7th Cir. 1995). Section 2114 provides that

> A person may not discharge or in any manner discriminate against a seaman because . . . the seaman has refused to perform duties ordered by the seaman's employer because the seaman has a reasonable appre-

hension or expectation that performing such duties would result in serious injury to the seaman, other seamen, or the public.[3]

46 U.S.C. § 2114(a)(1)(B). Artco contends that judgment as a matter of law was appropriate because Gwin admitted that he never received an order from Artco to push six long tows. On cross examination, Artco's attorney asked Gwin

> From the time you were first asked to consider towing barges that were six lengths long, southbound on the Mississippi River until the time your employment ended on June 10, of 2003, nobody at Artco ever ordered you to take a six long tow southbound on the Mississippi River, did they sir?

Gwin answered, "No, sir." During re-direct examination, Gwin and his attorney had the following exchange:

> Q: I want to ask you a few questions about some of the questions, some of the other questions Mr. Sacks had asked you about. You stated that Artco had never specifically ordered you to push a six long tow. Do you remember saying that?
>
> A: Yes, sir.

---

[3] The Seaman's Protection Act, of which § 2114 is a part, was drafted in response to the Fifth Circuit's decision in *Donovan v. Texaco, Inc.*, 720 F.2d 825, 828-29 (5th Cir. 1983), where the court held that the Occupational Safety and Health Act's prohibition against retaliatory discharge of an employee did not apply to seamen. Congress passed the Act "to expand the protection of seamen against discrimination. This section does not allow for anyone to discharge or discriminate against any seaman who reports a violation of a maritime law to the Coast Guard or refuses to perform duties which he believes would result in his or another's individual's injury." H.R. Conf. Rep. No. 777 (2002).

Q: I wanted to know why you said that.

\*\*\*

A: I got the evaluations, had the evaluations, and I looked at them. And by those evaluations I assumed that was what I had to do, something because I could see the writing on the wall that I was fixing to get furloughed, terminated, or laid off.

Artco argues that this testimony demonstrates that Gwin did not receive an order to push six long tows. We disagree. While Gwin testified that he did not receive an *explicit* order, the evidence in the record is sufficient to support a finding that Artco implicitly ordered him to push six long tows. Gwin testified that despite his repeated refusal to push six long tows, Hussell persistently asked him to do so. Gwin's attorney asked him, "Did they keep—did anybody ask you again whether you wanted to push six long?" Gwin responded, "Yes, sir. It seemed like just about every trip or every other trip . . . ." Gwin stated that after being asked so frequently to push six long tows, "I felt that and said to myself and thought to myself, this isn't voluntary anymore."

Gwin also presented testimony that he called Hussell to get his boat fixed because the "propellers and the boat was shaking real bad." Hussell told Gwin that if Gwin would agree to push six long tows, Artco could probably get the boat in to be repaired sooner. In addition, Artco began a program called the "free ride," in which pilots were forced to choose between going home without pay or riding on their own boat while another captain operated it, pushing a six long tow. Finally, as discussed above, Gwin presented testimony concerning two negative evaluations. Three months after the last evaluation, Hussell demoted Gwin to pilot and then terminated him. Thus, the evidence

at trial was more than sufficient to support the jury's finding.

Artco, ignoring all of the circumstantial evidence except for the evaluations, maintains that evaluations are not orders. Artco states that "employee evaluations by their nature look only to what has happened in the past. An order refers to something required to be done in the future." However, Artco overlooks the portion of both evaluations entitled "recommendations for improvement," which clearly advise towing six longs in the future.

Artco next contends that Gwin's assumption that he had to push six long is not enough to support a claim under § 2114 because employers can control orders, but they cannot control assumptions. Artco distinguishes between an "assumption," which "involves taking something for granted without any proof," and a "conclusion," which is "derived from studying facts." Artco is merely arguing semantics. According to Artco, if Gwin testified that he *concluded* that he had to tow six longs, then that would be sufficient to hold Artco liable under § 2114. In any event, Artco's liability under § 2114 was not based on Gwin's assumption, it was based on the totality of the circumstantial evidence that Artco had given an implicit order.

Artco finally argues that several other captains who consistently refused to push six long tows received evaluations nearly identical to Gwin's but were not fired. Therefore, Artco contends, Gwin's evaluations could not be orders. Artco does not provide any citations to the record for its assertion, nor does it provide any further information about the other captains or their evaluations. Regardless, whether or not Artco treated other captains differently, a jury reasonably could find—given the circumstantial evidence pertaining to Gwin—that he was ordered to push six long tows.

### B.  Rule 54(d) Costs

Artco argues that the district court erred by denying its Federal Rule of Civil Procedure 54(d) motion for costs because § 2114 does not supercede Rule 54(d). The proper interpretation of Rule 54(d) is a legal conclusion that this Court reviews de novo. *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999). Rule 54(d) states, "Except when express provision therefor[e] is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Section 2114(b) provides that the court may order any appropriate relief, including

   (3)  an award of costs and reasonable attorney's fees to a prevailing plaintiff not exceeding $1,000; and

   (4)  an award of costs and reasonable attorney's fees to a prevailing employer not exceeding $1,000 if the court finds that a complaint filed under this section is frivolous or has been brought in bad faith.

Artco claims that § 2114 merely augments the normal recovery of costs to a prevailing defendant with an award of attorney's fees that are expressly not recoverable under Rule 54(d). We reject this argument. Section 2114 provides for the recovery of both costs and attorney's fees. If the statute was merely supplementing Rule 54(d) by allowing attorney's fees, then it would not have included an express reference to costs. We therefore hold that § 2114 supercedes Rule 54(d). Because the jury rejected Artco's contention that the plaintiffs' claims were frivolous and brought in bad faith, Artco is not entitled to its costs or attorney's fees under § 2114.

Artco points out that each plaintiff brought claims under several different legal theories, only one of which was

§ 2114. Artco prepared defenses to these other claims, but, after discovery, the plaintiffs submitted only the § 2114 claims to the jury. Artco argues that this is akin to a voluntary dismissal, which means that Artco prevailed on these claims and should receive its costs under Rule 54(d). *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) (noting that a voluntary dismissal without prejudice renders the opposing party a "prevailing party" within the meaning of Rule 54). We agree and remand to the district court for a determination of which of Artco's costs are solely allocable to the plaintiffs' dismissed claims.

## C. Rule 26(b)(4)(C) Costs

Artco alleges that the district court erred by denying its motion to compel payment for the fees and expenses associated with the deposition of Mike Thompson, Artco's retained expert on marine safety. This Court reviews the denial of expenses for expert discovery for an abuse of discretion. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943 (7th Cir. 2005). Federal Rule of Civil Procedure Rule 26(b)(4)(C) provides, "unless manifest injustice would result, . . . the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." The mandatory language of the rule is tempered by two limitations: 1) the costs may not be imposed if doing so would result in manifest injustice, and 2) the expert's fees must be reasonable. In other words, before refusing to order a deposing party to pay the other party's expert, the district court must explicitly find either manifest injustice or that the fee was unreasonable. *See United States v. Twin Falls, Idaho*, 806 F.2d 862, 879 (9th Cir. 1986), *overruled on other grounds as recognized by Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541 (9th Cir. 1992). The

district court did not explain its decision to deny Artco's motion to compel payment. As a result, the district court abused its discretion by denying Artco's motion to recover Thompson's expenses.[4]

Artco next argues that the district court erred by denying its motion to compel payment for the fees and expenses of its thirty-six (36) non-retained experts. It concedes that there is no federal rule that requires the plaintiffs to pay for Artco's non-retained experts. However, Artco claims that the plaintiffs agreed to pay for the travel and lodging expenses of Artco's non-retained experts. If an agreement did exist and Artco believes that the plaintiffs' breached that agreement, Artco has a potential remedy in state court for breach of contract. The district court did not abuse its discretion by denying Artco's motion to compel payment for its non-retained experts.

## III. CONCLUSION

For the above reasons, we AFFIRM the district court's judgment as it pertains to Artco's liability, but REVERSE the denial of costs in part and REMAND for further proceedings pursuant to this opinion.

---

[4] On remand, the district court should address Gwin's argument that Thompson's fees were unreasonable.

No. 06-2900

A true Copy:

      Teste:

              _____
              *Clerk of the United States Court of*
               *Appeals for the Seventh Circuit*