# In the United States Court of Federal Claims

No. 13-940C
(Filed: September 30, 2020)

******************************************

SONOMA APARTMENT ASSOCIATES,  \*
A California Limited Partnership,  \*
                                 \*   RCFC 54(d)(1); Motion for Review of
             Plaintiff,          \*   Clerk's Taxation of Costs; 28 U.S.C.
                                 \*   § 1920(2); Costs of Daily Trial Transcript
v.                               \*   for Days of Trial During Which Testimony
                                 \*   Was Heard on an Unsuccessful Claim;
THE UNITED STATES,               \*   Allocation of Costs
                                 \*
             Defendant.          \*

******************************************

Daphne A. Beletsis, Santa Rosa, CA, for plaintiff.

Matthew P. Roche, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

The court awarded plaintiff Sonoma Apartment Associates, a California Limited Partnership, damages in its breach-of-contract suit against the United States, a portion of which were overturned on appeal. After the entry of final judgment, the clerk taxed costs against defendant. Presently before the court is defendant's motion for review of a portion of the costs award. For the reasons set forth below, the court grants in part and denies in part defendant's motion.

## I. BACKGROUND

Plaintiff obtained a loan from the federal government to construct rural low- and moderate-income housing. It was contractually entitled to prepay the balance of the loan after twenty years, but when it sought to exercise this right, the government denied its request. After plaintiff filed suit, the government conceded liability for breach of contract and the court held a seven-day trial on the issue of damages. During trial, plaintiff presented evidence in support of its claims for expectancy damages and a tax neutralization payment. The court ultimately directed that judgment be entered for plaintiff in the amount of $7,395,318—$4,223,328 for expectancy damages and a tax neutralization payment of $3,171,990.

Defendant successfully appealed the court's award of a tax neutralization payment to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"),[1] and the court accordingly directed the entry of judgment for defendant on that claim. Thereafter, pursuant to Rule 54(d)(1)(C)(iii) of the Rules of the United States Court of Federal Claims ("RCFC"), the clerk, upon her assessment of plaintiff's Bill of Costs, taxed costs against defendant in the amount of $25,225.08. As relevant here, the award of costs included $19,025.70 for hearing and trial transcript fees.

Defendant timely filed a motion for review of the clerk's taxation of costs pursuant to RCFC 54(d)(1)(C)(iv), challenging only the award of costs for daily trial transcripts for the days that the court heard testimony regarding plaintiff's claim for a tax neutralization payment, an objection that was not raised before—and therefore could not have been addressed by—the clerk.[2] Specifically, defendant objects to the award of $11,387.50 for the costs plaintiff incurred to obtain daily transcripts for four days of trial, as follows:

| October 20, 2016 | $1,450.00 |
| October 21, 2016 | $3,762.50 |
| October 24, 2016 | $3,500.00 |
| October 25, 2016 | $2,675.00 |

Plaintiff filed a response in opposition to defendant's motion and defendant filed a reply. The court deems oral argument unnecessary.

## II. DISCUSSION

### A. Standard of Review

Upon the filing of a Bill of Costs by a prevailing party, the clerk shall either tax or disallow the requested costs. RCFC 54(d)(1)(C)(iii); accord Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012) (noting that "the assessment of costs most often is merely a clerical matter that can be done by the court clerk" (quoting Hairline Creations, Inc. v. Kefalas, 664 F.2d 652, 656 (7th Cir. 1981))). Any party may seek the review of the clerk's action, and that "review will be made on the existing record" unless otherwise ordered by the court. RCFC 54(d)(1)(C)(iv). The court's review of the clerk's action is de novo. See Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 233 (1964) (remarking that "[o]n review of the clerk's assessment, it was

---

[1] The Federal Circuit did not conclude that a tax neutralization payment could not be awarded as a matter of law, but instead held that plaintiff presented insufficient evidence to sustain such an award in this case. See Sonoma Apartment Assocs. v. United States, 939 F.3d 1293, 1301 (Fed. Cir. 2019) (concluding that the judgment should be vacated because it was improper to use "a single year of taxable income to predict the future rates at which each partner would pay taxes").

[2] Defendant did not have the opportunity to address the costs related to plaintiff's unsuccessful claim for a tax neutralization payment in its response to the Bill of Costs because plaintiff filed the Bill of Costs prematurely.

[the district judge's] responsibility to decide the cost question himself"); Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) ("A district court's review of the clerk's determination of costs is de novo."); Sun Ship, Inc. v. Lehman, 655 F.2d 1311, 1317-18 (D.C. Cir. 1981) (requiring the district judge to "properly review the clerk's taxation decision and determine the costs appropriately awarded").

## B. Standards for Assessing Costs

In the United States Court of Federal Claims ("Court of Federal Claims"), costs "should be allowed to the prevailing party to the extent permitted by law."[3] RCFC 54(d)(1). By statute, "[a] judgment for costs when taxed against the United States shall . . . be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation." 28 U.S.C. § 2412(a)(1). "Taxable costs are limited to relatively minor, incidental expenses," Taniguchi, 566 U.S. at 573, such as "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," 28 U.S.C. § 1920(2).

The prevailing party has the burden to establish "the costs to which it is entitled." Cohlmia v. St. John Med. Ctr., 693 F.3d 1269, 1288 (10th Cir. 2012). If the court, upon "careful scrutiny," Farmer, 379 U.S. at 233, determines that an item proposed as a cost is allowable, reasonable, and necessary, Soler v. Waite, 989 F.2d 251, 255 (7th Cir. 1993), then the burden shifts to the nonprevailing party to demonstrate that the costs are not taxable, Cohlmia, 693 F.3d at 1288.

"[T]he decision whether to award costs ultimately lies within the sound discretion of the [trial] court." Marx v. Gen. Revenue Corp., 568 U.S. 371, 377 (2013); accord Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442 (1987) ("Rule 54(d) generally grants a federal court

---

[3] In Neal & Co. v. United States, the Federal Circuit concluded that the presumption that costs should be awarded to the prevailing party was not available in the Court of Federal Claims. 121 F.3d 683, 686-87 (Fed. Cir. 1997). That conclusion was based on the language of RCFC 54(d), which, at that time, provided:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as a matter of course to the prevailing party in any action not dismissed for lack of subject matter jurisdiction, unless the court otherwise directs; but costs against the United States shall be imposed only to the extent permitted by law.

Id. at 684 (quoting RCFC 54(d) (1997)) (emphasis omitted). The Federal Circuit noted that due to the exception clause at the beginning of RCFC 54(d)(1), the existence of 28 U.S.C. § 2412(a)(1), a costs provision applicable in cases involving the United States as a party, rendered the remainder of RCFC 54(d)—including the language that "costs shall be allowed as a matter of course to the prevailing party"—inoperative. Id. at 684-85. However, RCFC 54(d) was amended in 2002 to remove the exception clause (among other changes). Thus, there is no longer a basis for the conclusion that prevailing parties are not entitled to a presumption in favor of costs in this court.

discretion to refuse to tax costs in favor of the prevailing party.").  However, "a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so."  Baez v. U.S. Dep't of Justice, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam); accord Neal & Co., 121 F.3d at 686.

## C.  The Trial Transcripts

Although defendant never contested plaintiff's entitlement to expectancy damages, it did contest the amount of expectancy damages to which plaintiff was entitled, and the court ultimately awarded such damages in an amount much greater than the $1,090,000 calculated by defendant's expert, Brad Weinberg.  Accordingly, as defendant concedes in its motion, plaintiff is the prevailing party.  See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (stating that "a 'prevailing party' is one who has been awarded some relief by the court"); Neal & Co., 121 F.3d at 685 (observing that "a party which prevails only in part may nonetheless qualify for an award of costs"); see also Shum v. Intel Corp., 629 F.3d 1360, 1367 (Fed. Cir. 2010) (holding that there can be only one prevailing party in a case).  Defendant, however, contends that plaintiff is not entitled to recover certain costs allocable to its unsuccessful claim for a tax neutralization payment.

As noted above, the court's discretion to award costs is broad.  Indeed, federal appellate courts have affirmed decisions in which the trial court awarded full costs to a party that prevailed on only some of its claims.  See, e.g., Roberts v. Madigan, 921 F.2d 1047, 1058 (10th Cir. 1990); United States v. Mitchell, 580 F.2d 789, 793-94 (5th Cir. 1978).  Nevertheless, the Federal Circuit has observed that "a partial victory . . . may influence the amount of the award" of costs. Neal & Co., 121 F.3d at 685; accord Shum, 629 F.3d at 1367 n.8 ("Depending on the extent and nature of the prevailing party's victory, it may be proper for the trial court to award only low costs or no costs at all.").  And persuasive authority suggests that when costs can be allocated between successful and unsuccessful claims, a court should endeavor to do so.  See, e.g., Shum, 629 F.3d at 1370 (applying the law of the Ninth Circuit to conclude that "[i]t was not unreasonable for the district court to consider which claims the parties respectively won, or to reduce the prevailing party's costs award to reflect the extent of its victory (i.e., the claims it lost)"); Gwin v. Am. River Transp. Co., 482 F.3d 969, 974-75 (7th Cir. 2007) (remanding to the district court to determine which costs were allocable to the claims on which the defendant prevailed); Cosgrove v. Sears, Roebuck & Co., 191 F.3d 98, 102 (2d Cir. 1999) (remanding to the district court to further develop the record with respect to costs after being "unable to ascertain . . . the basis upon which the district court imposed the costs, whether the costs were related solely to the claims on which [the defendant] prevailed, and the computation and/or the apportionment of the costs"); Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic, 152 F.3d 588, 595 (7th Cir. 1998) (holding that the prevailing party was not "entitled to fees and costs allocable to claims and theories that neither succeeded, nor contributed to the limited victory that it . . . obtained"); see also Pelzer v. City of Philadelphia, 771 F. Supp. 2d 465, 473 (E.D. Pa. 2011) (declining to reduce an award of costs when it was "impossible to assign specific costs to certain claims" because the plaintiff's "successful claims were factually and legally interrelated with her unsuccessful claims"); Morrison Enters., LLC v. Dravo Corp., No. 08CV3142, 2010 WL 411231, at *3 (D. Neb. Jan. 26, 2010) (stating that it would be necessary to segregate the costs associated with the prevailing party's unsuccessful claims from the total

claimed costs, that "the intertwined nature of the plaintiffs' claims" would make the task "exceedingly difficult, if not impossible," and that, consequently, an award of costs was not appropriate); Shevin v. Lederman, 92 F.R.D. 752, 753 (D. Colo. 1981) (holding that the clerk "properly disallowed" the costs "related almost exclusively to" claims upon which the plaintiffs "did not prevail").

Defendant, as an initial matter, appears to fault plaintiff's use of daily trial transcripts: It notes that plaintiff did not seek prior approval for ordering daily transcripts and further notes that the clerk relied solely on a declaration from plaintiff's counsel in determining that the case was complex and that daily transcripts were useful for counsel and the court.[4] The foundation of its putative critiques is language from a decision of the Federal Circuit in a patent case applying the law of the Tenth Circuit:

> As a general rule, daily trial transcript costs should not be awarded absent court approval prior to the trial. In the present case, there was no prior approval. However, a district court may overlook the lack of prior approval if the case is complex and the transcripts proved invaluable to both the counsel and the court.

Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1184 (Fed. Cir. 1996) (citation omitted); see also id. at 1180-83 (concluding that the prevailing party determination should be a matter of Federal Circuit law to promote uniformity in the patent law context, but that regional circuit law governed the review of a district court's decision to award costs). The "prior approval" requirement has never been applied by a judge of the Court of Federal Claims or by the Federal Circuit in a decision binding on the Court of Federal Claims.[5] Accordingly, the court adopts the standard suggested by 28 U.S.C. § 1920(2) and articulated in prior Court of Federal Claims decisions: the expense of daily transcripts "must be justified on grounds of necessity; if incurred for the convenience of counsel, such costs are not taxable." Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 712 (2010), quoted in Salem Fin., Inc. v. United States, 134 Fed. Cl. 544, 547 (2017); accord Asphalt Supply & Serv., Inc. v. United States, 75 Fed. Cl. 598, 602-03 (2007) ("Assessment of the premium delivery charges of daily transcripts must be for necessity, not just for the convenience of counsel, for those charges to be taxable.").

---

[4] Defendant makes these observations, but does not actually contend that plaintiff should have sought prior approval to use daily transcripts or that the clerk erred in relying on the declaration of plaintiff's counsel to support her conclusions.

[5] When the Federal Circuit decides an issue in a patent case that does not involve patent law, it typically applies the law of the circuit in which the patent case arose. See, e.g., Atlas IP, LLC v. Medtronic, Inc., 809 F.3d 599, 604 (Fed. Cir. 2015). Normally, the Federal Circuit's rulings on nonpatent issues in patent cases are not binding on the Court of Federal Claims because they are not considered to be the law of the Federal Circuit. United Med. Supply Co. v. United States, 77 Fed. Cl. 257, 265 (2007); cf. Exxon Corp. v. United States, 931 F.2d 874, 877 n.4 (Fed. Cir. 1991) (noting that while it applied regional circuit law regarding a procedural issue in a decision in a patent case, the regional circuit law it applied was "commonly accepted in federal jurisprudence, and should be considered the law of the Federal Circuit as well").

In her sworn affidavit, plaintiff's counsel states that she requested "rough daily transcripts" that she "personally used throughout the trial to prepare for the next day's testimony" and to prepare her closing argument on the last day of trial. Beletsis Aff. ¶ 4, Mar. 5, 2018. Plaintiff further avers, in response to defendant's motion for review, that this case was complex, "involving lost profits . . . occurring over a long period stretching from years in the past [to] decades into the future," and that "daily transcripts were essential for the efficient management of the trial by the parties and the Court." Resp. 8. The complexity of the case is borne out by the trial transcript and the court's eighty-five-page trial decision. The determination of plaintiff's damages involved complicated financial calculations with a multitude of variables. Even setting aside the tax neutralization issue, the parties spent several days of the trial presenting evidence regarding plaintiff's expectancy damages (and for which the court used almost fifty pages of its trial decision to address and analyze). Accordingly, the court accepts plaintiff's assertion that daily transcripts were, in general, necessary for the effective prosecution of its case, and finds that the expense incurred for the daily transcripts was reasonable.

That daily transcripts were reasonable and necessary for plaintiff's use in the case does not mean, however, that their cost is automatically taxable. RCFC 54(d)(1) provides a presumption in favor of awarding costs, but that presumption can be overcome in appropriate circumstances. Defendant contends that such circumstances are present in this case, arguing that because plaintiff did not ultimately prevail on its claim for a tax neutralization payment, the costs of daily transcripts for the days of trial that the court heard testimony on that issue should not be taxable. It states that on October 20 and October 21, 2016, the court heard testimony (both direct- and cross-examination) from plaintiff's expert— Barry Ben-Zion, Ph.D.—relating to his tax neutralization analysis, and that on October 24 and October 25, 2016, the court heard testimony (both direct- and cross-examination) from defendant's expert—Jon Krabbenschmidt— relating to the same topic. It further remarks that to the extent the case was complex, the complexity was caused by Dr. Ben-Zion's tax neutralization analysis, and that without the associated testimony, the length of the trial would have been cut in half. Finally, defendant notes that it had challenged the sufficiency of Dr. Ben-Zion's analysis in advance of trial, but that plaintiff failed to cure the defects. Accordingly, defendant contends, it should not be taxed the costs of daily transcripts for October 20, 21, 24, and 25, 2016.

Plaintiff responds that it would be improper to disallow the costs of daily transcripts for these four days of trial when only some of the testimony on those days related to its claim for a tax neutralization payment. Indeed, it notes that defendant made no attempt to establish that even a majority of those four days was devoted to the tax neutralization issue. Based on its own review of the transcripts for those days, plaintiff contends that "all four days of proceedings questioned by the Government included substantial portions of testimony on matters other than the tax neutralization claim, and even [then] much of the testimony related to the tax impact was focused on issues as to which the Government did not prevail either below or on appeal." Resp. 5.

As a general proposition, the court agrees that costs associated with the pursuit of an unsuccessful claim should not be taxable against the party that prevailed on that claim. However, that straightforward proposition can be difficult to apply in practice, especially when

considering the taxability of the cost of a transcript for a day of trial that might include multiple witnesses providing testimony in support of multiple claims. In such circumstances, the court must exercise its broad discretion in determining what costs should be taxed to fashion a just result for the parties—whether it be allowing the costs in their entirety, disallowing the costs in their entirety, or something in between.

In this case, the court rejects the extreme positions advanced by the parties. It will not, as defendant requests, disallow the entire cost of a daily transcript merely because one witness provided testimony on the tax neutralization issue. And it will not, as plaintiff requests, allow the entire cost of a daily transcript as a consequence of defendant's failure to identify the portions of the transcript that related to the tax neutralization issue. Rather, the court will review the transcripts for the four days at issue to determine whether it is possible to segregate the portions of the testimony directed at the tax neutralization issue such that the cost attributable to that issue can be reasonably ascertained. In conducting this review, the court declines plaintiff's invitation to parse the tax neutralization testimony to identify which portions were implicated by the Federal Circuit's holdings on appeal. While the court agrees that the Federal Circuit's vacatur of the judgment awarding a tax neutralization payment was premised on an insufficiency of evidence rather than on an outright rejection of tax neutralization payments as an element of damages, the facts remain that plaintiff was unsuccessful on its tax neutralization claim, and all testimony regarding the requested tax neutralization payment was offered in support of that claim.

Turning to its review of the transcripts at issue, the court notes that the two central claims addressed at trial—expectancy damages and a tax neutralization payment—were relatively discrete in that the former concerned the prior and future income of the real property owned by plaintiff (an apartment complex in Sonoma, California) and the latter concerned the prior and future income of plaintiff's partner-owners and the tax consequences of their receipt of a lump-sum damages award. Moreover, due to counsel's orderly presentation of their clients' cases and examination of witnesses, it was easy to discern the issues being addressed by the witnesses who testified during the four days at issue. Accordingly, the court finds the following:

- October 20, 2016: The entire day was devoted to the direct-examination of Dr. Ben-Zion. The transcript of that testimony and related discussions spanned from pages 491 to 598 (107 pages), with issues related to expectancy damages addressed from pages 491 to 556 (65 pages) and issues related to the tax neutralization payment addressed from pages 556 to 598 (42 pages). Thus, plaintiff is entitled to 61% (65/107) of the cost of the daily transcript for October 20, 2016: $884.50.

- October 21, 2016: The court heard the remainder of Dr. Ben-Zion's testimony in support of plaintiff's case-in-chief, testimony from a government employee—Sandra Pedrotti—regarding the loan program underlying the parties' dispute, and the beginning of the direct-examination of Mr. Weinberg regarding expectancy damages. The transcript spans from pages 608 to 898 (290 pages). Dr. Ben-Zion's testimony and related discussions pertained to the tax neutralization payment on pages 608 to 666, pages 767 to 815, pages

818 to 822, and pages 827 to 834 (117 pages) and to expectancy damages on pages 666 to 767, page 817, and pages 823 to 826 (105 pages). The testimony of Ms. Pedrotti and Mr. Weinberg and the related discussions, none of which concerned the tax neutralization payment, spanned from pages 836 to 898 (62 pages). Altogether, 167 pages of the transcript related to issues other than the tax neutralization payment. Thus, plaintiff is entitled to 56% (167/290) of the cost of the daily transcript for October 21, 2016: $2107.00.

- October 24, 2016: The court heard the remainder of Mr. Weinberg's testimony regarding expectancy damages and the beginning of the direct-examination of Mr. Krabbenschmidt regarding the tax neutralization payment. The transcript spans from pages 909 to 1179 (270 pages). Mr. Weinberg's testimony and related discussions spanned from pages 909 to 1161 (252 pages), and Mr. Krabbenschmidt's testimony and related discussions spanned from pages 1162 to 1179 (17 pages). Thus, plaintiff is entitled to 93% (252/270) of the cost of the daily transcript for October 24, 2016: $3255.00.

- October 25, 2016: The court heard the remainder of Mr. Krabbenschmidt's testimony regarding the tax neutralization payment and the rebuttal testimony of Dr. Ben-Zion. The transcript spans from pages 1188 to 1394 (206 pages). Mr. Krabbenschmidt's testimony and related discussions spanned from pages 1188 to 1345 (157 pages). Dr. Ben-Zion's testimony and related discussions pertained to the tax neutralization payment on pages 1347 to 1362 and pages 1385 to 1389 (19 pages), and to expectancy damages on pages 1362 to 1384 and pages 1390 to 1394 (26 pages). Thus, plaintiff is entitled to 13% (26/206) of the cost of the daily transcript for October 25, 2016: $347.75.

In total, plaintiff is entitled to be reimbursed for the costs incurred to obtain these four daily transcripts in the amount of $6594.25, which represents a $4793.25 reduction of the costs allowed for these transcripts by the clerk. In other words, the court allows hearing and trial transcript fees of $14,232.45.

### III.  CONCLUSION

As explained in more detail above, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion for review. The court disallows $4793.25 of the costs previously taxed by the clerk for daily trial transcripts. Accordingly, the court taxes cost in favor of plaintiff and against defendant as follows:

| | |
|---|---:|
| Fees of the Clerk | $400.00 |
| Fees for Hearing and Trial Transcripts | $14,232.45 |
| Total Fees and Costs for Witnesses | $1351.16 |
| Costs for Deposition Transcripts | $4385.27 |
| Other Costs | $62.95 |
| **Total Costs Taxed** | **$20,431.83** |

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge